IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARGILL MEAT SOLUTIONS CORPORATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) Case No. 12-cv-0725-MJR |
| FREEZER REFRIGERATED STORAGE, INC., d/b/a POLARVILLE REFRIGERATED WAREHOUSE, | ) ) ) ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

REAGAN, District Judge:

    A.    **Introduction and Procedural Overview**

In this breach of contract action, Cargill Meat Solutions Corporation (CMS) sues a warehouse owner and operator -- Freezer Refrigerated Storage Incorporated, doing business as Polarville Refrigerated Warehouse (Polarville). The Court enjoys subject matter jurisdiction via the federal diversity statute, 28 U.S.C. 1332.

CMS claims that Polarville breached the terms of a contract between the parties (a Warehousing Agreement dated October 21, 2010)[1], damaging CMS's products. More specifically, CMS alleges that Polarville breached the Warehousing Agreement by failing to keep its warehouse in good repair and

---

    [1]    A copy of the Warehousing Agreement is attached to the complaint (Doc. 2-1).

that a freezer failure resulted in the large-scale spoilage of food products which CMS stored with Polarville. The complaint further alleges that Polarville failed to maintain insurance policies with specified limits (adequate to cover risks of loss like that which occurred) and refused to indemnify CMS for its loss, costing CMS over $519,000 in damages, exclusive of attorneys' fees, interest, and costs.

In response to the complaint, Polarville moved to compel CMS to arbitrate this claim pursuant to a cold storage warehouse agreement dated August 3, 2011 (Cold Storage Agreement, Doc. 9). Polarville seeks arbitration under either the Illinois Uniform Arbitration Act, 710 ILCS 5/1, et seq., or the Federal Arbitration Act, 9 U.S.C §§ 1-16 (*see* Doc. 10, p. 3).

### B.  Analysis

Polarville owns and operates a freezer warehouse located in National City, Illinois (within this Judicial District). On October 21, 2010, Wichita Kansas-based CMS entered into the Warehousing Agreement with Polarville, agreeing that Polarville would store CMS's frozen food products at Polarville's National City warehouse. Under the Warehousing Agreement, Polarville agreed to "keep the warehouse in good order and repair and in such condition that all Product handled (under the agreement) shall remain, if frozen, at an air and product temperature of 0 degrees Fahrenheit or below" (Doc. 2-1, § 3.1). The Warehousing Agreement did not contain an arbitration provision.

CMS alleges that on or before May 30, 2011, Polarville experienced a freezer failure, and CMS's products stored pursuant to the Warehousing Agreement were destroyed. CMS filed this lawsuit on June 20, 2012, after formally submitting a claim to Polarville, which Polarville refused to pay. Polarville moves this Court for an order compelling arbitration and dismissing this breach of contract claim or, alternatively, staying these proceedings pending arbitration. In support of its motion, Polarville cites the Cold Storage Agreement, dated August 3, 2011 (Doc. 9, Exh. 1).

Significantly, the Cold Storage Agreement is a contract between Polarville and CMS's *parent* company -- Cargill, Inc. ("Cargill"). CMS is *not* a party to the Cold Storage Agreement. However, Polarville argues that the Cold Storage Agreement entered into by Cargill and Polarville is enforceable against CMS by virtue of the CMS-Cargill relationship. Polarville also contends that the Cold Storage Agreement supersedes the Warehousing Agreement, binding CMS to its terms, including the arbitration clause.

Polarville notes that the Federal Arbitration Act and the similar Illinois statute "require a court to compel arbitration where … a contract provides for it" (Doc. 10, p. 3). Indeed, the Federal Arbitration Act "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." **Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006).** Stated another way, the Federal Arbitration Act "strongly favors arbitration when the parties have agreed to

it." *Faulkenberg v. CB Tax Franchise Systems, LP*, 637 F.3d 801, 804 (7th Cir. 2011).

"To compel arbitration, a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich American Ins. Co. v. Watts Industries, Inc.* 466 F.3d 577, 580 (7th Cir. 2006), *citing Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 690 (7th Cir. 2005), and *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999).

Thus, to compel CMS to arbitrate, Polarville must first show that CMS is bound by an enforceable arbitration agreement. The United States Court of Appeals for the Seventh Circuit has held that whether or not a company is bound to arbitrate, "as well as what issues it must arbitrate, is a matter to be determined by the Court on the basis of the contract entered into by the parties." *Zurich*, 417 F.3d at 691, *citing AT & T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986).

Lacking an arbitration agreement in the <u>Warehousing Agreement</u> entered with CMS, Polarville argues that Cargill controlled the activities of CMS such that Cargill and CMS may be treated as a single entity, thereby binding CMS to the arbitration provision in the <u>Cold Storage Agreement</u> executed by Cargill. The Court rejects this argument.

First, although Polarville alleges that Cargill controlled CMS, it offers no support for this conclusory allegation. Second, "a mere parent-subsidiary relationship 'does not create the relation of principal and agent or alter ego between the two.'" **Zurich**, 417 F.3d at 688, *quoting Caligiuri v. First Colony Life Ins. Co.*, 742 N.E.2d 750, 756 (Ill. App. 2000). *See also Thomson–CSF, S.A. v Am. Arbitration Ass'n*, 64 F.3d 773, 777 (2d Cir. 1995)(a corporate relationship generally is not enough to bind a nonsignatory to an arbitration agreement). Thus, CMS's relationship with Cargill alone does not bind CMS to Cargill's contractual agreements.

Furthermore, although Polarville correctly recognizes that there are five doctrines by which a nonsignatory may be bound by an arbitration agreement entered into by others, Polarville fails to sufficiently articulate how and which of the five doctrines binds CMS to arbitrate the claims at issue herein. *See Zurich*, 417 F.3d at 687, *citing Fyrnetics (H.K.) Ltd. v. Quantum Group, Inc.*, 293 F.3d 1023, 1029 (7th Cir. 2002) (delineating five doctrines through which nonsignatory can be bound to an arbitration agreement entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference.).

So, Polarville has not demonstrated the existence of an agreement to arbitrate executed by CMS. Nor does the record support the proposition that the dispute between the parties in the case at bar falls *within the scope* of

*the arbitration provision* sought to be enforced (contained within the Cold Storage Agreement). The briefs indicate that the Cold Storage Agreement related to Cargill product stored at a Polarville warehouse in Valmeyer, Illinois, not the National City warehouse that experienced the freezer failure.

Moreover, Polarville and Cargill entered into the Cold Storage Agreement in August 2011 -- nearly three months *after* Polarville's freezer failed on May 30, 2011. So in its motion to compel arbitration, Polarville asks this Court to enforce a contract that did not exist at the time of the alleged breach which is the subject of this suit.

Simply put, the Warehousing Agreement executed by CMS and Polarville has no arbitration provision, and Polarville has not shown any basis by which CMS can be bound by the arbitration provision contained in the Cold Storage Agreement executed by Cargill. As CMS properly points out in its memorandum (Doc. 15, p. 5), Polarville has stressed that arbitration is favored and doubts should be resolved in favor of arbitration, but "these points are irrelevant when there is no contract between the parties that provides for arbitration."

C. **Conclusion**

For all these reasons, the Court **DENIES in its entirety** Defendant Polarville's motion to compel arbitration (Doc. 9). A Scheduling and Discovery Order has been entered herein, a trial date has been assigned,

and the case has been set for settlement conference before the Honorable Stephen C. Williams, United States Magistrate Judge, on January 9, 2013.

IT IS SO ORDERED.

DATED November 19, 2012

                                        s/  Michael J. Reagan
                                        MICHAEL J. REAGAN
                                        United States District Judge