IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CARGILL MEAT SOLUTIONS CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 12-cv-0725-MJR-SCW |
| | ) | |
| FREEZER REFRIGERATED STORAGE, INC., doing business as Polarville Refrigerated Warehouse, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER

REAGAN, District Judge:

### A. INTRODUCTION AND PROCEDURAL OVERVIEW

In this lawsuit, a meat processor/distributor sues a warehouse owner/operator for breach of contract and negligence.[1] Plaintiff Cargill Meat Solutions Corporation (Cargill) contracted with Defendant Freezer Refrigerator Storage, Inc., doing business as Polarville Refrigerated Warehouse (Polarville), to store food products in a warehouse in National City, Illinois, within this Judicial District.

The amended complaint alleges the following. Cargill and Polarville executed an October 2010 warehousing agreement (the Contract). The Contract, inter alia, (a) obligated Polarville to keep the warehouse in good repair and maintain a temperature - for both air and stored products - of 0 degrees Fahrenheit; (b) made

---

[1] As noted in prior Orders herein, the Court enjoys subject matter jurisdiction under the federal diversity statute, 28 U.S.C. 1332. Plaintiff is a Delaware/Kansas corporation, defendant is Missouri/Illinois corporation, and the amount in controversy easily satisfies the above-$75,000 threshold.

1 | Page

Polarville liable to indemnify Cargill for losses and expenses due to Polarville's failure to perform its responsibilities under the Contract; and (c) required Polarville to maintain, at its own expense, insurance policies with specified limits to cover all risks of loss. Polarville experienced a freezer failure in May 2011. Cargill discovered the problem in June 2011 when retrieving stored products. A significant portion of Cargill's products were destroyed due to Polarville's breach of the Contract. Cargill submitted a claim which both Polarville and, subsequently, Polarville's insurance carrier refused to pay.[2] Cargill's loss of the products in question increased Cargill's costs elsewhere (e.g., Cargill had to pay to "place significant portions of the product in landfills," Doc. 2, p. 5). As a direct result of Polarville's breach of the Contract, Cargill suffered damages of roughly $520,000.

Cargill demanded a jury trial. Trial is set October 21, 2013 before the undersigned District Judge, with a final pretrial conference on October 16, 2013. The discovery deadline (May 24, 2013) and dispositive motion deadline (June 24, 2013) have elapsed. One dispositive motion was timely-filed – Doc. 44, Cargill's motion for summary judgment, which was fully briefed (on the merits) as of August 5, 2013. Cargill filed two additional motions in August – Doc. 55, seeking to strike Polarville's response, and Doc. 57, requesting oral argument.

---

[2] Polarville directly settled a portion of Cargill's claims with the insurance carrier but did not turn over any of those proceeds to Cargill, instead retaining the insurance proceeds for its (Polarville's) own use and general operation (Doc. 32, p. 5).

The undersigned District Judge permits oral argument when helpful or necessary to resolution of a pending motion. Cargill has identified, and the Court can glean, no reason oral argument is warranted here.

Cargill suggests that oral argument is necessary to explain the case background, the unique circumstances underlying Cargill's summary judgment motion, and the deficiencies in Polarville's opposing brief (Doc. 57, p. 2). Cargill did not request oral argument when it moved for summary judgment in June (to highlight anything unusual or complex in the background of the case or the circumstances underlying the motion), and Cargill has challenged the alleged deficiencies in Polarville's response via separate motion to strike. The undersigned Judge has a solid grasp on the case background, disagrees that Cargill's motion involves "unique circumstances," and understands Cargill's arguments about the shortcomings in Polarville's memo opposing summary judgment. So, the Court denies Cargill's motion for oral argument (Doc. 57). For the reasons explained below, the Court also denies Cargill's summary judgment motion and motion to strike (Docs. 44, 55).

B.  STANDARDS GOVERNING SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anderson v. Donahoe,* 699 F.3d 989, 994 (7th Cir. 2012), *citing* FED. R. CIV. P. 56(a). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Serednyj v. Beverly Healthcare, LLC,*

**656 F.3d 540, 547 (7th Cir. 2011),** *citing Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 248 (1986).**

Summary judgment has been described as the "put up or shut up moment" in the case, at which "the non-moving party is required to marshal and present the court with the evidence she contends will prove her case," evidence on which a reasonable jury could rely. ***Porter v. City of Chicago,*** **700 F.3d 944, 956 (7th Cir. 2012),** *citing Goodman v National Sec. Agency, Inc.,* **621 F.3d 651, 654 (7th Cir. 2010).**

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-moving party. ***Anderson v. Donahoe,*** **699 F.3d at 994;** ***Righi v. SMC Corp.,*** **632 F.3d 404, 408 (7th Cir. 2011);** ***Delapaz v. Richardson,*** **634 F.3d 895, 899 (7th Cir. 2011).** Before the nonmovant can benefit from this favorable view of the evidence, he must place some evidence before the court. ***Montgomery v. American Airlines, Inc.,*** **626 F.3d 382, 389 (7th Cir. 2010).**

Because the *plaintiff* moves for summary judgment here, an additional word about the burden of proof merits note. The Supreme Court has reminded district courts that "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." ***Liberty Lobby,*** **477 U.S. at 254.**

Rule 56 imposes an initial burden of production on the movant for summary judgment – he must demonstrate that a trial is not needed. ***Celotex Corp. v. Catrett,*** **477**

U.S. 317, 323 (1986). In the typical case, when the defendant (who does *not* bear the ultimate burden of persuasion at trial) is the summary judgment movant:

> the requirements that Rule 56 imposes … are not onerous. It does not require the moving party to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id. (emphasis in original).* Rather, the movant's initial burden "may be discharged by 'showing' – that is point[ing] out to the district court – that there is an absence of evidence to support the nonmoving party's case." Upon such a showing, the nonmovant must then "make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322.
>
> The nonmovant need not depose her own witnesses or produce evidence in a form that would be admissible at trial, but she must "go beyond the pleadings" … to demonstrate that there is evidence "upon which a reasonable jury could properly proceed to find a verdict" in her favor."

*Modrowski v. Pigatto,* 712 F.3d 1166, 1168-69 (7th Cir. 2013). *See also Marcatante v. City of Chicago,* 657 F.3d 433, 439 (7th Cir. 2011); *Crawford v. Countrywide Home Loans, Inc.,* 647 F.3d 642, 648–49 (7th Cir. 2011), *citing Celotex,* 477 U.S. at 323.

However, when the party moving for summary judgment also bears the burden of persuasion at trial (i.e., the movant is the plaintiff, or the movant is a defendant asserting an affirmative defense), he must establish *all* the essential elements of his claim or defense. *See Celotex,* 477 U.S. at 322. *See also Surles v. Andison,* 678 F.3d 452, **455-56 (6th Cir. 2012) (if summary judgment movant is plaintiff, she must show that the record contains evidence satisfying her burden of persuasion);** *Adler v. Wal-Mart Stores, Inc.,* **144 F.3d 664, 670 (10th Cir. 1998)(at summary judgment stage, party that bears burden of persuasion at trial must come forward with sufficient evidence of each essential element of its prima facie case);** MOORE'S FEDERAL PRACTICE § 56.13(1) (3d ed. 2000).

To summarize, if the summary judgment movant does *not* bear the burden of proof at trial, he can prevail just by showing an absence of evidence to support any essential element of the nonmovant's case.  See *Modroswki*, **712 F.3d at 1169 (explaining the paths to summary judgment under Rule 56(c)(1)).**  But if the summary judgment movant *does* bear the burden of proof at trial, he can prevail only by proving each element of his case with evidence sufficiently compelling that no reasonable jury could return a verdict for the nonmovant. *Celotex,* **477 U.S. at 331 ("If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence … that would entitle it to a directed verdict if not controverted at trial").**  See also *Liberty Lobby*, **477** U.S. 248; *Lewis v. Kordus,* **2010 WL 3700020 (E.D. Wisc. 2010) (unreported) ("where the moving party bears the burden of proof at trial, he can prevail only by proving every element of his case with evidence so compelling that no reasonable jury could return a verdict for the non-moving party").**

The case at bar fits in the latter category.  To prevail on summary judgment and bypass the jury trial requested in its complaint, movant/Plaintiff Cargill must prove each element of its case with evidence sufficiently compelling that no reasonable jury could return a verdict for nonmovant Polarville.

In ruling on a summary judgment motion, this Court can consider any evidence that would be admissible at trial.  "The evidence need not be admissible in form (for example, affidavits are not normally admissible at trial), but it must be admissible in content."  *Harney v. City of Chicago*, **702 F.3d 916, 922 (7th Cir. 2012).**  For example, under Rule 56(c), a district court "may consider answers to interrogatories when

reviewing a motion for summary judgment so long as the content of those interrogatories would be admissible at trial." *Johnson v. Holder*, 700 F.3d 979, 982 (7th Cir. 2012), *quoting Hardrick v. City of Bolingbrook*, 522 F.3d 758, 761 (7th Cir. 2008).

Additionally relevant to the motion now before the Court, the 2010 amendments to the Federal Rules of Civil Procedure altered and reorganized some provision of Rule 56. For instance, Rule 56(c)(4) no longer requires a formal affidavit to be submitted. Instead, the Rule permits use of a declaration to oppose summary judgment, as long as the declaration is "made on personal knowledge," shows that the declarant is competent to testify on the matters stated, and sets forth facts that would be admissible in evidence at trial. *See Jajeh v. County of Cook*, 678 F.3d 560, 568 (7th Cir. 2012).

    C.    ANALYSIS OF CARGILL'S SUMMARY JUDGMENT MOTION

As subject matter jurisdiction is premised on diversity herein (and neither party has raised a conflict of law issue), this Court applies Illinois substantive law. *See, e.g., Ball v. Kotter*, -- F.3d --, 2013 WL 3800209, *7 (7th Cir. July 23, 2013); *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 952 n.5 (7th Cir. 2013).

Cargill seeks summary judgment on its breach of contract claim, Count I of the two-count amended complaint.[3] The elements of a breach of contract claim in Illinois are (1) the existence of a valid, enforceable contract, (2) performance by the plaintiff of all required conditions, (3) breach by the defendant, and (4) damages. *Wigood v. Wells*

---

[3] Count II alleges a negligence cause of action based on Polarville assuming a duty to perform certain services for Cargill and then failing "to use the same standard of care that other warehousemen would use in maintaining and storing food products" (Doc. 32, p. 7). Cargill maintains that if the Court grants summary judgment on the breach of contract claim (Count I), no issues will remain for trial on the negligence claim (Count II) (*see* reply brief, Doc. 54, p. 5).

*Fargo Bank, N.A.,* **673 F.3d 547, 560 (7th Cir. 2012).**[4]  *Accord W.W. Vincent and Co. v. First Colony Life Ins. Co.,* **814 N.E.2d 960, 967 (Ill. App. 2004)(elements of Illinois breach of contract action are (1) existence of valid enforceable contract, (2) substantial performance by plaintiff, (3) breach by the defendant, and (4) resultant damages).**

As to the fourth element, resultant damages, Cargill, "as the party seeking to recover, … must prove that [it] suffered damage because of the breach and establish the correct measure of damages." *Harmon v. Gordon,* **712 F.3d 1044, 1052 (7th Cir. 2013),** *citing TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.,* **491 F.3d 625, 631 (7th Cir. 2007) (In Illinois, to recover for breach of contract, a plaintiff must both establish that he sustained damages and establish a reasonable basis for the computation of those damages.).** And if the plaintiff seeks recovery of lost profits, he must establish lost profits with "reasonable certainty." *Tas,* **491 F.3d at 631-32.**

Cargill has effectively organized and presented its version of the undisputed facts and contends that these facts add up to proof of breach of contract. The June 13, 2013 memorandum supporting summary judgment (Doc. 44) clearly sets forth the timeline of key events, such as the March, May, and June 2011 compressor failures at the Polarville warehouse, the resulting temperature loss, the discovery of the freezer problems, the alleged damage to Cargill products, and the need to condemn some -- and sell at below-market price other -- products. Cargill carefully explains how it calculated its damages (totaling $519,447.33), insists no issues remain for trial, and

---

[4] Sometimes the first element – existence of an enforceable contract – is broken into its subparts, including (a) offer and acceptance, (b) consideration, and (3) definite and certain terms. *Wigood,* **673 F.3d at 560.**

maintains that it is entitled to "its undisputed damages" of $519,447.33 (Doc. 44, pp. 15-17, 19). Although Cargill's argument has first-blush appeal, closer scrutiny reveals that disputed issues remain for resolution by the trier of fact.

The record establishes that the Cargill and Polarville were parties to a valid contract (executed October 21, 2010), that the Contract was in effect at the times relevant to this lawsuit, and that the Contract obligated Polarville to keep the warehouse in good repair, maintain the food products at certain temperatures, not move Cargill products to other locations without Cargill's prior consent, and indemnify Cargill for losses related to Polarville's failure to perform pursuant to the terms of the Contract. The record before the Court also establishes that on March 6, 2011, May 26, 2011, and June 6, 2011, Polarville experienced electrical service interruptions which damaged a compressor at its warehouse. Sometime the week of June 13, 2011, Polarville moved Cargill products to another warehouse location for storage. Polarville has not yet paid Cargill for the product loss following the equipment failure in the warehouse.

But the record leaves genuine fact issues regarding the alleged breaches of the Contract, including the degree of temperature loss resulting from the compressor failures, and *whether, when, and how* those losses affected Cargill's stored products. For example, Polarville admits that some temperature loss occurred in the May compressor failure but denies that any significant temperature loss occurred in the freezer room until May 29, 2011. And Polarville denies that all of Cargill's stored product failed to remain at zero degrees or was damaged. These are not naked denials; Polarville has tendered evidence to support its position, and fact questions arise therefrom.

A question also exists as to whether Cargill orally consented to Polarville moving products from the Polarville warehouse to Gateway Cold Storage the week of June 13, 2011 (which is material to the issue of whether Polarville breached the Contract by not securing prior *written* consent).[5] Polarville has not yet indemnified Cargill for losses and expenses in question,[6] but fact questions exist as to whether those losses and expenses *arose out of* Polarville's failure to perform under the Contract.

So material fact questions linger regarding liability. Careful examination of the record also reveals fact questions relating to damages – i.e., whether the conditions in the warehouse rendered completely unmarketable all of the products claimed by Cargill, and/or whether channels for sale existed for products which Cargill ordered destroyed. The record contains support for Polarville's position that although the temperature in one of the freezer rooms (the Crown freezer) temporarily exceeded 0 degrees, no safety issue resulted, and the Cargill product was not rendered unfit for consumption. The record indicates that *none* of the products removed from the National City warehouse ever returned to Cargill inventory for ordinary disposition; instead, the products all were treated (across the board) as damaged and, for instance, sold to salvage buyers. The record further indicates that Cargill made this decision

---

[5] It is not clear that failure to give advance written notice that Cargill products were being moved to another storage facility (one alleged breach of the Contract cited by Cargill) was causally related to the damages/losses Cargill claims to have sustained.

[6] Cargill asserts that Polarville's insurer, Hartford Steam Boiler (HSB), paid Polarville for the equipment failure at the warehouse but Polarville did not give the insurance proceeds to Cargill, despite the fact the distribution from HSB "was intended to cover Cargill's damages" (Doc. 44, p. 14).

based on temperature readings taken between packages of meat contained in boxes. The use of those package readings as proxies for the temperature of the meat itself raises legitimate questions about the need to sell all products at a discount. These questions tie into the reasonableness of the lost profit damages sought by Cargill.

Simply put, it is not clear that Cargill's method of calculating loss is the appropriate or proper measure of damages, entitling Cargill (without any further presentation of testimony or evidence) to be awarded the $519,447.33 it claims in "undisputed damages," exclusive of interest, costs and attorneys' fees (Doc. 44, p. 16).

Nearly all of these questions exist even if the Court disregards the challenged Macheca affidavit. Which the Court will not do.

Cargill demands that the Court strike the affidavit for four reasons: (1) Macheca was not disclosed as an expert, (2) Macheca's affidavit contradicts other evidence in the record, (3) Macheca's affidavit is not based on personal knowledge, and (4) Macheca's affidavit is self-serving. The affidavit does not contravene Rule 56(c)'s requirements (or the Rules of Evidence), and the Court denies the motion to strike.

David L. Macheca is the President of Polarville. He did not need to be disclosed as an expert witness in order to be able to attest to facts and matters within his own personal knowledge and experience. The Macheca Affidavit does not proffer expert testimony. It contains fact testimony and admissible lay opinion testimony.

Federal Rule of Civil Procedure 701 explains that a lay witness may offer testimony in the form of an opinion if the testimony is (a) rationally based on his perception, (b) helpful to clearly understand the testimony or determine a fact in issue,

and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.  The Advisory Committee Notes to Rule 701 (specifically directed to the 2000 Amendments to the Rule) point out that the Rule distinguishes between expert and lay *testimony,* not witnesses.  The challenged testimony here was drawn from David Macheca's direct involvement in the business and events underlying Cargill's claims.  The testimony in the affidavit is rationally based on Macheca's perception, is helpful to determining the facts at issue, and is not based on scientific, or technical, or similar specialized knowledge.[7]

Similarly unavailing is Cargill's argument that the Court must strike the Macheca Affidavit because it contradicts other evidence in the record.  Cargill seizes on minor inconsistencies between deposition testimony and affidavit contents.  But Polarville correctly notes that this is not a case in which a witness backtracked from deposition testimony to conjure up a disputed fact to block summary judgment.  The record reveals no material contradiction between the Macheca Affidavit and Macheca's deposition testimony.

---

[7] The Notes also mention that most courts have permitted the owner or officer of a business to testify to the value or profits of a business without qualifying the owner/officer as an expert witness.  **FED. R. EVID. 701, Advisory Comm. Notes to 2000 Amendments, p. 465 (West Revised 2013 ed.).**  *See also Echo, Inc. v. Timberland Machines & Irr., Inc.,* **661 F.3d 959, 965 (7th Cir. 2011) (referencing this point but affirming district court's striking of an affidavit because it contained nothing more than a company president's *ipse dixit*); Von der Ruhr v. Immtech Int'l, Inc.,** 570 F.3d 858, 862 (7th Cir. 2009) (in the context of lost profits, reiterating that lay opinion testimony is allowed "where the witness bases his opinion on particularized knowledge he possesses due to his position within the company.").

Furthermore, Macheca was directly involved in the incidents in question. For instance, Macheca was present for inspections Cargill performed at the Polarville warehouse and observed the meat products, so it is permissible for him to state: "I did not observe any widespread thawing of the product" (Macheca Affidavit, ¶ 26), or to testify that he saw Cargill employees separating products on the outside of the pallets in a certain manner, etc. (*Id.*, ¶ 29). The affidavit is based on personal knowledge, contains facts that would be admissible in evidence, and plainly shows that the affiant is competent to testify on the matters stated. The affidavit complies with the requirements of Rule 56(c)(4).

Finally, the affidavit does not warrant striking on the ground that it is self-serving and conclusory. As the Seventh Circuit admonished last month, finding error where a district court discredited testimony because of its "self-serving" nature:

> Deposition testimony, affidavits … and other written statements by their nature are self-serving. *Payne v. Pauley,* 337 F.3d 767, 771 (7th Cir. 2003). As we have repeatedly emphasized over the past decade, the term "selfserving" must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment. Hill described the three encounters … based on his personal knowledge and set forth specific facts and the district court should have considered his statements as evidence.

*Hill v. Tangherlini,* -- F.3d --, 2013 WL 3942935, *2 (7th Cir. Aug. 1, 2013).

The Court properly considered the Macheca Affidavit and other documents/evidence submitted by Polarville in response to Cargill's motion for summary judgment. Cargill, as movant for summary judgment, has not discharged its burden of demonstrating that a trial is not needed. It cannot be said that, viewing the

facts and reasonable inferences in the light most favorable to Polarville, no reasonable jury could return a verdict for Polarville.

    D.    CONCLUSION

As stated above, the Court **DENIES** Cargill's motions to strike (Doc. 55) and for oral argument (Doc. 57). Furthermore, genuine issues of material fact remain which are "best resolved by the trier of fact" and preclude summary judgment. ***Pagel v. TIN Inc.*, 695 F.3d 622, 628 (7th Cir. 2012).** Accordingly, the Court **DENIES** Cargill's summary judgment motion (Doc. 44).

All pending motions have been resolved, and jury trial is set to proceed on October 21, 2013. The undersigned Judge cannot honor that trial setting (or move it to another open slot), due to a conflict with a criminal trial that must proceed the week of October 21st, and nine other trials set to commence in the two-week window thereafter. Accordingly, having consulted with the Honorable G. Patrick Murphy, United States District Judge, the undersigned hereby **TRANSFERS** this case to Judge Murphy for trial. The Clerk of Court **SHALL REASSIGN** the case to Judge Murphy for all further proceedings. Judge Murphy will reset the trial (and final pretrial conference) by separate notice or Order.

    IT IS SO ORDERED.

    DATED September 11, 2013.

                                            s/ Michael J. Reagan
                                            Michael J. Reagan
                                            United States District Judge